UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLARENCE MCCANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     Case No. 4:10CV1694 CDP |
| | ) |
| NEW WORLD PASTA COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Clarence McCann brought this lawsuit against his former employer, defendant New World Pasta Company, alleging employment discrimination. McCann claims New World retaliated against him for filing a 2009 lawsuit and discriminated against him based on his race, gender, age, and disability. New World filed a motion for summary judgment arguing it is entitled to judgment as a matter of law on all claims. Because the evidence shows New World is in fact entitled to judgment as a matter of law, I will grant its motion for summary judgment.

## Factual Background

Plaintiff Clarence McCann is a black male. Defendant New World Pasta Company manufactures dried pasta products at a plant in St. Louis, Missouri. On October 2, 2006, New World hired McCann, then age 59, as a casual worker. On May 8, 2009, McCann filed a lawsuit in this Court against New World, *McCann v.*

*New World Pasta*, No. 4:09CV710 CDP (E.D. Mo. filed May 8, 2009), alleging

failure to promote.  McCann claimed he was disabled because he has heart disease

in the form of a slow heartbeat and because he had to wear a pacemaker.  McCann

had begun wearing the pacemaker in 2000.  McCann alleged that his disability was

the reason New World failed to promote him to a full-time, regular employee on

the many occasions he had applied between February 2008 and May 2008.

McCann's physician, on the medical information form provided to the Missouri

Commission on Human Rights in conjunction with the 2009 lawsuit, stated

McCann had a "sinus bradycardia (slow heartbeat)."  The physician was also asked

to "[l]ist the limitations/restriction in any of the . . . patient's major life activities

that are caused by his/her condition[,]" and, in response, he indicated that McCann

had "no limitations."

On June 30, 2009, McCann submitted yet another application for a regular,

full-time position with New World.  On July, 20, 2009, McCann was promoted to a

regular, full-time employee in the machine operator position.  As with all new

hires, McCann was considered a probationary employee for 90 days.  On

September 10, 2009, McCann voluntarily dismissed his 2009 failure to promote

lawsuit.

Three other New World employees in the machine operator position were on

probation at the same time as McCann:  Ward Yeoman, Wayne Patten, and Asim

Okic. McCann and Yeoman were assigned to long goods. Patten and Okic were assigned to short goods.

A probationary employee's performance is measured, in part, by a mathematical calculation of the Overall Equipment Effectiveness (OEE). Probationary employees are expected to achieve and maintain an OEE of 40%. For example, because the machines cannot operate at maximum capacity for a full shift and allowing for downtime, if the machine's maximum output was 1,000 pasta cases the employee would have to produce 400 cases. Machine operators are also required to fill out Daily Packaging Reports for quality and production purposes. The paperwork requires the operator to report, on each shift, the machine's downtime, the reason for the downtime, the total hours the machine ran, the total cases he was expected to package, and the total cases actually packaged.

At the end of the 90 day probationary period Patten and Okic became regular, full-time employees. New World extended both McCann's and Yeoman's probationary periods for an additional 30 days because neither had achieved the 40% average benchmark. McCann's OEE average was 31.5%.

On October 14, 2009, New World's human resources manager sent McCann a letter to "impress upon [him] that [he was] in serious jeopardy of losing [his] job." The letter said McCann's issues included "ongoing substandard production numbers, refusal to work mandatory overtime as required under the collective

bargaining agreement, a complaint from a fellow employee of threatening behavior and inappropriate language, insubordinate and uncooperative behavior toward [his] supervisor, and repeated violations of required 'good manufacturing practices' in a food production facility by [his] failure to wear a beard guard on the production floor." The letter directed McCann to take immediate corrective action on all issues. It went to say the human resources director wanted to see McCann succeed and had offered him additional training and other assistance, but McCann refused. McCann claims he never refused additional training. The letter also said it appeared McCann was simply "trying to force [New World] to terminate [his] employment." Also on October 14, 2009, McCann received a Corrective Action Report and verbal counseling for failing to properly complete his Daily Packaging Reports.

On November 5, 2009, during the extended probationary period, McCann's OEE average had dropped to 26.10% and Yeoman's OEE average was 35.14%. On November 6, 2009, Yeoman was terminated.

Also on November 6, 2009, McCann was assigned to operate Packaging Machine #8. He was the only machine operator to operate his machine during that shift. Each box was required to have a code date of "NOV6-12VBH." The "code date" is a unique code of alpha and numeric characters reflecting the date and location of manufacture of each package of product produced. Part of New

World's quality control process requires machine operators to conduct an hourly sample of five packages of product packed that hour and visually inspecting those boxes. After each hourly sampling the machine operator must certify, on a Packaging Quality Worksheet, that he actually and personally observed the clear and correct code date.

McCann completed a Packaging Quality Worksheet during his November 6, 2009 shift, certifying seven consecutive times that the code dates on the boxes he was packaging were clear and correct. He also submitted a sample each hour to the quality control group. All other boxes were put into cases and shipped to New World's Chicago warehouse for distribution. On November 9, 2009, McCann met with his supervisor and shop steward to discuss his Packaging Quality Worksheet from November 6. McCann was shown several packages without any codes, which New World said he had submitted to quality control from. McCann could not explain the discrepancy at that time. In this lawsuit, however, McCann asserts several possible explanations. McCann first asserts that the samples are not kept in a proper chain of custody, and so the boxes he was shown during the meeting may have been tampered with and may not have been the boxes he packaged. He maintains that the boxes he examined during the November 6 shift at each of the times required by the Packaging Quality Worksheet had code dates on them.

On November 11, 2009, New World terminated McCann. According to the letter, McCann was terminated for "unsatisfactory performance and unacceptable behavior during [his] probationary period, including, but not limited to deliberate falsification of quality/production records."

Procedural Background

On January 27, 2010, McCann filed a Charge of Discrimination with the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission. McCann checked the boxes indicating that his claim was based on race, age, disability, and retaliation. He said New World knew he was disabled and denied his request for accommodation, i.e., a different and allegedly less strenuous job, based on his gender, age, disability, and in retaliation for filing the 2009 lawsuit. He claimed New World extended his probationary period in retaliation for filing the 2009 lawsuit. He also claimed New World discharged him based on his age, disability, and in retaliation for filing the 2009 lawsuit. McCann's Charge of Discrimination did not mention any harassment.

On April 21, 2010, a representative from the MCHR interviewed McCann over the telephone. When asked whether he had difficulty performing any machine operator duties because of his pacemaker McCann said ". . . It's not physically stressful. It's mentally stressful." When asked whether he had any restrictions because of his pacemaker McCann said he "had a heart attack two or

three months prior (to becoming a regular employee)," had a stent placed in one artery, and received a "full bill of health to come back to work." McCann also admitted his work performance "might not have been" acceptable during probation because he did not fill out his paperwork correctly. On July 20, 2010, after the investigation, McCann received a right to sue letter from the EEOC.

On September 10, 2010, McCann filed this lawsuit claiming retaliation for filing the 2009 lawsuit and discrimination based on his race, gender, age, and disability. McCann alleged that the extension of his probation and his termination were in retaliation for his filing the 2009 lawsuit. He further alleged that he was denied two open positions for discriminatory reasons. He claimed that it was a known fact that New World was trying to get a younger employee, and that it was said that the company had too many older employees who were not producing enough. With respect to the other positions, he claimed that it was a known fact that the company wanted another white press operator and that he was more qualified than the female employee who received the warehouse position. The Complaint also claimed McCann's supervisor harassed him based on his race. In addition to naming New World as a defendant, McCann also sued New World's chief executive officer, several New World supervisors, and one co-worker. I dismissed McCann's case as to all defendants other than New World because none of the individual defendants could have been held liable under 42 U.S.C. § 2000e-5

(Title VII), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), or the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (ADEA).

New World then filed this motion for summary judgment arguing that it was entitled to judgment as a matter of law on all claims.

<u>Summary Judgment Standard</u>

In ruling on summary judgment, the Court views the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations in its pleadings, but must set forth by affidavit or other evidence of specific facts showing a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2).

To avoid summary judgment a party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in its favor. *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of

evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. 242 at 252; *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

<u>Discussion</u>

No genuine issue of material fact exists in this case, and New World is entitled to judgment as a matter of law on all claims. McCann failed to exhaust his administrative remedies on his harassment claim. The record contains no evidence showing McCann is disabled within the meaning of the ADA or showing any connection between McCann's 2009 lawsuit and his termination. McCann has also failed to make a prima facie case on his discrimination claims, and the undisputed evidence shows that New World had legitimate non-discriminatory reasons for terminating him. I will, therefore, grant New World's motion for summary judgment in its entirety.

*Exhaustion of Administrative Remedies*

New World argues that because McCann's Charge of Discrimination lists November 11, 2009 as the "date discrimination took place," McCann cannot assert any claims before that date. New World's argument is misguided. McCann's Charge of Discrimination encompassed all of the claims before me except the alleged harassment.

Exhaustion of administrative remedies entitling a claimant to bring a cause of action under Title VII "requires a claimant to give notice of all claims of discrimination in the administrative complaint." *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). A plaintiff may thereafter "seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 887 (8th Cir. 1998). Though the allegations in the administrative complaint must be construed liberally, *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1998), "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge . . .." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) (internal quotation marks and citation omitted).

Although McCann listed November 11, 2009 as the date discrimination took place, the narrative portion of his Charge of Discrimination alleged discrimination based on race, age, and disability along with allegations of retaliation. McCann specifically referenced a failure to accommodate his disability, the extension of his probationary period, and his termination. Because it is clear from the face of the Charge of Discrimination that all the allegations except the discharge occurred

before November 11, 2009, McCann did not fail to exhaust his administrative remedies simply because he entered that single date on the charge.

McCann's Charge of Discrimination did not, however, mention any alleged harassment by his supervisor. Nor did the harassment alleged in his Complaint grow out of or reasonably relate to anything in his Charge of Discrimination. Because McCann failed to exhaust his administrative remedies on his harassment claim, New World is entitled to judgment as a matter of law on that claim.

*Alleged Failure to Accommodate*

McCann claims New World failed to accommodate his disability when it denied his requests to transfer to different and allegedly less strenuous jobs. Among the options available to a disabled employee seeking a reasonable accommodation under the ADA is assignment to a vacant position. 42 U.S.C. § 12111(9)(B). The employee must, however, actually have a disability to be entitled to the ADA's protections. *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960 (8th Cir. 2000). McCann claims he is disabled because he has heart disease in the form of a slow heart beat and because he has to wear a pacemaker.

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2). "According to the regulations that guide the interpretation of the ADA, an impairment is 'substantially limiting' if it renders an individual unable to perform a

major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population." *Taylor*, 214 F.3d at 960, citing 29 C.F.R. § 1630.2 (j)(1)(i)-(ii).

McCann cites to *Snyder v. Norfolk Southern Ry. Corp.*, 463 F.Supp. 2d 528, 537 (E.D. Pa. 2006) for the proposition that "pumping and circulating of blood is a major life activity." *Snyder*, however, held that because pumping and circulating blood is a major life activity, "*if* the circulation *is restricted enough*, a court *can* find the disease has substantially limited this majority life activity." *Id.* at 537 (emphasis added); *see also Taylor*, 214 F.3d at 960 (holding that "[h]eart disease is an impairment that, *if it substantially limits* a major life activity, *may* constitute a disability" when deciding that a claimant with heart disease failed to establish an ADA-qualifying disability) (emphasis added) (internal citations omitted)); *Weber v. Strippit, Inc.*, 186 F.3d 907, 913 (8th Cir. 1999) (holding that heart disease does not automatically qualify as a disability under the ADA and because the claimant "failed present sufficient evidence to establish that the nature, duration, and long-term impact of his medical problems caused him to be substantially limited in a major life activity . . . the district court did not err in granting judgment as a matter of law." (internal citations omitted)).

The undisputed evidence here shows McCann has no substantial limitation of any major life activity, and without a substantial limitation he cannot be deemed disabled within the meaning of the ADA. McCann's physician provided a form to the MCHR indicating that, although McCann had a slow heartbeat and had used a pacemaker for several years, McCann had "no limitations" or restrictions on any major life activities caused by his condition. Further, on April 21, 2010, when giving a telephone interview to a representative from the MCHR in conjunction with the Charge of Discrimination that resulted in this case, McCann said the machine operator job was not physically stressful, but mentally stressful. He also said he had been given a "full bill of health to come back to work" after his heart attacks.

In response to New World's evidence, McCann says he "[does] not agree with physician's findings completely" because he does have limitations such as his inability to go through metal detectors and be near large magnets. McCann's disagreement is immaterial, and neither of his examples are of major life activities. McCann also submitted a print-out from an exam on September 21, 2006, but it only establishes a fact no one disputes, that McCann has a pacemaker.

McCann next argues that because he receives Social Security Disability benefits, he is automatically disabled within the meaning of the ADA. That is not the law. The Social Security Act and the ADA both help individuals with

disabilities, but in different ways. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999). The SSA and the ADA define "disability" differently, and the presumptions afforded to a claimant under the SSA's five step analysis simplify the disability determination; the ADA's framework requires a more fact-intensive inquiry. *Id.* at 804. For example, here McCann has a corrective device, i.e., his pacemaker, which would be taken into account under the ADA framework. *See Sutton*, 527 U.S. at 487 (holding that whether an individual is substantially limited in a major life activity must take into account mitigating measures such as medicine and assistive devices). In fact, the EEOC has said "[t]he fact that an individual has a record of . . . or is classified as disabled for other purposes does not guarantee that the individual will satisfy the [ADA] definition of 'disability.'" *See* Interpretive Guidance on Title I of the Americans with Disabilities Act, 56 Fed. Reg. 35,742 (July 26, 1991) (codified at 29 C.F.R. Part 1630, App.).

A disability determination under the SSA is not controlling for purposes of the ADA. *See McNeill v. Wayne Cnty.*, 300 Fed. Appx. 358, 362 (6th Cir. 2008); *see also Lloyd v. Washington & Jefferson Coll.*, 288 Fed. Appx. 786, 788, n. 1 (3d Cir. 2008) (rejecting a contention that the "receipt of SSA benefits qualifies as a 'record of impairment' because the SSA's definition of disability differs from the ADA's definition of disability"); *Lucas v. Methodist Hosp., Inc.*, 180 Fed. Appx. 585, 586 (7th Cir. 2006) (holding that the Social Security Administration's

determination of "disabled" is not conclusive because the standards under the ADA and the SSA differ). A Social Security Administration determination is not enough to create a genuine issue of material fact as to McCann's alleged disability without any evidence of the nature, duration, and long-term impact on his major life activities.

Because there is no evidence showing any substantial limitations, McCann is not disabled under the ADA, so he was never legally entitled to an accommodation. His claim for failure to accommodate will be denied.

### Retaliation for Filing the 2009 Lawsuit

McCann claims New World extended his probation and terminated him in retaliation for his filing the 2009 lawsuit. Section 2000e–3(a) of Title 42 prohibits retaliation against an employee who has engaged in protected activity: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." To defeat a motion for summary judgment on a claim under this section, "a plaintiff must produce either direct evidence of retaliation, or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011) (quotation

marks omitted). McCann's claims are not supported by direct evidence, therefore, he must create an inference of retaliation to avoid summary judgment.

The *McDonnell Douglas* framework has three stages. In the first stage, McCann must establish a prima facie case of retaliation. *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077–78 (8th Cir. 2010). An employee establishes prima facie case of retaliation by showing that "(1) he engaged in protected conduct, (2) he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Pye*, 641 F.3d at 1021. If McCann succeeds at the first stage, New World then bears the burden of providing a legitimate, non-retaliatory basis for the alleged adverse action. *Fercello*, 612 F.3d at 1077–78. If New World meets its burden, in the third stage, McCann must show a genuine issue of fact exists as to whether New World's stated reason for the adverse action is pretextual. *Id.*

Extending McCann's probationary period under these circumstances did not constitute an adverse employment action because he was allowed to keep his status and pay despite his failure to meet the probationary requirements. *See Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) (holding that "[a] materially adverse action must be 'more disruptive than a mere inconvenience . . ..' There must be a material change in employment status - a reduction in title, salary, or benefits."). McCann's termination, however, did constitute an adverse employment action.

With respect to the termination, the first two elements of McCann's prima facie case are not in dispute, but no reasonable factfinder could infer a causal connection between his 2009 lawsuit and the termination that followed. A causal link between an employee's protected conduct and his termination may be shown if the retaliation occurred soon after the conduct or if the employer's concerns about the employee's conduct arose only after the employee engaged in protected conduct. *See Pye*, 641 F .3d at 1021–22. In the Eighth Circuit, "generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1989). And intervening acts of unprotected conduct serve to erode any purported causal connection suggested by the temporal proximity of protected conduct and adverse employment action. *Id.* at 1136; *see also Scroggins v. Univ. of Minnesota*, 221 F.3d 1042 (8th Cir. 2005).

Here, only McCann's testimony suggests retaliation as the motivation for his termination. But a party's unsupported, self-serving allegation that his employer's decision was retaliatory does not establish a genuine issue of material fact. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011) (citing *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008)); *see also Palesch v. Missouri Com'n on Human Rights*, 233 F.3d 560, 568 (8th Cir. 2000).

Retaliation has been found in cases where the employer tells an employee she will be terminated if she continues to engage in protected activity, *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866-67 (8th Cir. 2006), or immediately eliminates shifts and papers the employee's file with allegedly false memos after the employee engaged in protected activity, *Jones v. Fitzgerald*, 285 F.3d 705, 715 (8th Cir. 2002) (describing *Kim v. Nash Finch*, 123 F.3d 1046, 1060 (8th Cir. 1997). Here, no one at New World so much as mentioned the 2009 lawsuit to McCann after the litigation had concluded, and New World did not impose any new work restrictions. In fact, the undisputed evidence shows New World gave McCann a promotion in close proximity to the protected activity, then afforded him over 100 days to prove himself. No jury could reasonably find in McCann's favor based on the evidence presented, and McCann cannot establish a prima facie retaliation case.

*Age, Race, and Gender Discrimination*

McCann also claim he was discriminated against based on his age, race, and gender. Each of these claims is subject to the same *McDonnell Douglas* burden-shifting framework as the retaliation claim.

To establish a prima facie case of age discrimination McCann needed to show: (1) he was over 40 years old, (2) he met the applicable job qualifications, (3) he suffered an adverse employment action, and (4) some additional evidence that age was a factor in the employer's termination decision. *Rahlf v. Mo-Tech*

*Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011). McCann's Complaint alleged that he was denied two open positions based on his age. He claimed that it was a known fact that New World was trying to get a younger employee, and that it was said that the company had too many older employees who were not producing enough. McCann has not submitted any evidence to support these allegations. There is no evidence that age was a factor in New World's termination decision, and so McCann cannot state a prima facie claim of age discrimination.

To establish a prima facie case of race discrimination McCann was required to show: "(1) he is a member of a protected group; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently." *Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006). McCann's Complaint alleged that he was denied one of the open positions based on his race. He claimed that it was a known fact that the company wanted another white press operator at that time. Again, McCann has not submitted any evidence to support these allegations. Additionally, McCann cannot meet the second element of a prima facie case because he was not meeting his employers' legitimate expectations. McCann had several performance issues during his probationary period. Chief among those concerns was his failure to meet the OEE requirement. New World's probationary employees were expected to achieve and

maintain an OEE of 40%. At the end of McCann's 90 day probationary period, his OEE average was 31.5%; and, on November 5, 2009, during the extended probationary period, his OEE average had dropped to 26.10%. McCann cannot establish a prima facie case of race discrimination.

To establish a prima facie case of gender discrimination, McCann had to show that he: (1) is a member of a protected class; (2) was qualified for his job; (3) suffered an adverse employment action; and (4) alleged facts that give rise to an inference of gender discrimination. *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 874 (8th Cir. 2007). McCann's Complaint alleged that he was more qualified for the open position in the warehouse than the female employee who received the position, but he does not technically allege that the decision to hire the female employee and not him was based on his gender. Further, New World presented evidence that it awarded the position to the female employee on September 28, 2009, but McCann's complaint says he did not even inquire about the position until at least a month later. McCann cannot establish a prima facie case of gender discrimination.

*Legitimate Non-Discriminatory Reasons*

Because McCann failed to establish a prima facie case on any of his discrimination claims, I only reach New World's legitimate, non-discriminatory reasons as an alternative holding. New World asserted several reasons for not

awarding McCann the open positions he requested and for terminating McCann. A letter from the human resources manager written when his probation was extended detailed many reasons, and there simply is no evidence suggesting New World's reasons were pretextual.

Before addressing the undisputed legitimate, non-discriminatory reasons, I must address the alleged document falsification. McCann's final termination letter mentioned this alleged document falsification, which New World characterized as a "capital offense." The alleged falsification is heavily disputed between the parties and the documentary evidence does not conclusively establish its existence. Although I find that factual disputes remain on this incident, they would not preclude summary even if McCann had made a prima facie case because this dispute is not material. That is because New World has submitted substantial undisputed evidence of its legitimate, non-discriminatory reasons for not awarding McCann the open positions he requested and for terminating him. Those reasons are independent of the "falsification" incident.

With respect to the open positions, New World presented evidence that its CBA states that probationary employees have no rights with regard to bidding on open jobs, and so McCann could not have bid on any open position or been awarded any open position during his probationary period. McCann does not dispute this fact. He argues that he had more rights than one of the individuals

who received one of these jobs, but with no explanation or evidence as to why he believes he had more rights. New World's adherence to its CBA is a legitimate, non-discriminatory reason for not awarding McCann the positions.

With respect to the termination, New World showed that McCann's OEE numbers were not satisfactory. McCann claims that other probationary employees received more favorable treatment than him. An "employee can prove that [his] employer's articulated justification for an adverse employment action is pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1046 (8th Cir. 2010). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011). An employee may show an employer's stated reason for an adverse employment action is a pretext by showing the employer gave more lenient treatment to other employees who did not engage in protected activity. *E.E.O.C v. Kohler*, 335 F.3d 766, 774 (8th Cir. 2003). McCann must show the other employees were "similarly situated in all relevant respects." *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (internal citation omitted).

The OEE numbers are an objective standard. The OEE requirement subjected each probationary employees to the same objective performance standard. Two probationary employees – Patten and Okic – met the standard resulting in their successfully completing probation. Two others – McCann and Yeoman – did not meet the standard and they were terminated.

McCann claims Patten and Okic received more favorable treatment because they had an easier assignment in that they worked on fewer machines.[1] In response to this argument, New World submitted its plant manager's declaration saying every machine operator is expected to be able to efficiently operate any machine in the department because the business may dictate any assignment on any given shift. McCann does not claim that any machine was in better condition than any other nor does he dispute the fact that all machine operators were required to operate any machine on any given day.

Further, the documentary evidence shows Patten and Okic were required to work outside their assignments more frequently than McCann was and that they worked on as many different machines as McCann. Patten and Okic worked in long goods, on occasion, even though they were assigned to short goods. McCann only produced 192 cases of short goods product during his probation while Patten

---

[1]He also claims that Patten received favorable treatment because he had worked with the human resources manager at another plant. There is no evidence of any relationship or of any favorable treatment, so I need not consider this allegation in any detail.

and Okic produced some 376 and 1082 cases of long goods product, respectively. Patten and Okic worked outside their assigned area twice and five times as often as McCann did, respectively, yet they met their OEE requirements. Patten and Okic even worked on different machines as frequently as McCann did. McCann worked on eight different machines during his probation while Patten and Okic worked on seven and eight different machines, respectively. McCann has not shown that Patten and Okic were treated more favorably than he was.

Moreover, McCann received the same treatment as Yeoman. Yeoman, who had higher OEE numbers than McCann but also failed to meet the 40% benchmark, was terminated just days before McCann.

Despite all McCann's arguments, the undisputed evidence shows he could not achieve success in the machine operator position. McCann admitted to a representative from the MCHR during a telephone interview that his work performance "might not have been" acceptable during probation because he did not complete his paperwork properly. McCann also admits, at several places in the record, he would never have been able to meet the 40% OEE requirement. McCann claims New World put him in the machine operator position to "set him up" or conspire against him somehow, but McCann applied for the position. He asked for the position, sued New World for not placing him in the position, then

when he was awarded the position failed to meet New World's legitimate, evenly applied, and objective expectations.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion for summary judgment [#48] is granted. A separate judgment in accordance with this memorandum and order will issue this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this <u>30th</u> day of March, 2012.